IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES KNIGHT, | |
| Plaintiff, | CIVIL ACTION NO. 3:04-CV-2596 |
| v. | (JUDGE CAPUTO) |
| CORPORATION FOR NATIONAL AND COMMUNITY SERVICE, et al., | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is Defendants Corporation for National and Community Service (the "Corporation"),[1] Leslie Lenkowsky, and Gloria Sokolowski's[2] ("Federal Defendants") Motion to Dismiss, as well as Defendant American Cancer Society's ("ACS") Motion to Dismiss, Plaintiff's Complaint. For the reasons set forth below, the Corporation's and Federal Defendants' Motion to Dismiss will be granted, and ACS's Motion to Dismiss will be granted. The Court has jurisdiction over this matter as to ACS pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). The Court lacks jurisdiction over this matter as to the Corporation and Federal Defendants.

---

[1]The Corporation is a wholly owned federal government corporation as defined in 5 U.S.C. § 103, as well as a Federal Executive Agency as defined in 5 U.S.C. § 105. (Doc.1-25 ¶ 4; Doc. 22-1 p.1).

[2]Plaintiff refers to Sokolowski as "Solowski" in his Amended Complaint.

**BACKGROUND**

Plaintiff, Charles Knight, an African-American male, was hired as a volunteer by the AmeriCorps*VISTA ("VISTA")[3] program on November 21, 2000. (Doc. 1-25 ¶¶ 18, 29). Two other applicants, Debbie Howard, a white female, and Jason Head, a white male, were hired the same day. (Doc. 1-25 ¶ 30). Plaintiff was assigned to work for ACS in the Wyalusing School District, located in Bradford County, Pennsylvania. (Doc. 1-25 ¶ 19). As a VISTA volunteer, Plaintiff was responsible for, *inter alia*, recruiting and interviewing potential volunteers for ACS fundraising programs, documenting interviews of potential volunteers, and organizing volunteers for the fundraising programs. (Doc. 1-25 ¶ 37). In addition to these responsibilities, Plaintiff also created "assessment charts" from statistics gathered on cancer cases and deaths in the county and school district, taught computer classes to fellow VISTA volunteers, conducted surveys regarding implementation of school health clinics, assisted in the orientation of new VISTA volunteers, and developed photographs for the VISTA newsletter. (Doc. 1-25 ¶ 39).

Charles Haun, not a defendant in the present case, was the Community Organization Specialist for ACS and the VISTA Project Site Supervisor for the ACS-VISTA service project. (Doc. 1-25 ¶¶ 21, 26). On or about July 24, 2001, Plaintiff learned from Haun that there was an opening for a VISTA leader position in the Bradford County project. (Doc. 1-25 ¶ 45). Plaintiff was informed by Haun that the leader position

---

[3]VISTA provides full-time volunteers ("VISTAs") to low-income communities across the nation. VISTA is part of the Corporation. (Doc.1-25, Ex. A at 2). Organizations apply to the Corporation requesting that VISTAs be assigned to their community service projects. *Id.* "By assigning one or more [VISTAs], the Corporation is providing federal financial assistance to the organization." (Doc. 1-25, Ex. A at 3). "When they complete a year of service, VISTAs receive either an education award or a post-service stipend." *Id.*

would be filled by an outside person. *Id.*  Plaintiff was also under the impression that, to be eligible for consideration, an applicant for a VISTA leader position needed at least one year of service as a volunteer. (Doc. 1-25 ¶ 47).  Plaintiff believed that the VISTA leader position would be filled by an outside applicant because, of the current Bradford County VISTA volunteers, Plaintiff, Howard and Head had the most experience at only eight (8) months. (Doc. 1-25 ¶¶ 48-49).  On August 29, 2001, Sokolowski, a Corporation Supervisor, stated at a meeting that a person from outside the current VISTA volunteers who had one year of service would fill the Bradford County VISTA leader position. (Doc. 1-25 ¶ 51).  Thereafter, on September 14, 2001, Plaintiff learned that Howard had applied for the VISTA leader position. (Doc. 1-25 ¶ 52).  On September 19, 2001, Plaintiff emailed Haun about staying on for a second year of service. (Doc. 1-25 ¶ 53).  In the email, Plaintiff also inquired as to whether a person from the current group of volunteers would be considered for the VISTA leadership position. *Id.*  Haun did not respond to Plaintiff's email. (Doc. 1-25 ¶ 54).  On September 25, 2001, Haun met with Plaintiff and told Plaintiff that Howard had in fact applied for the VISTA leader position and that Haun was going to approve her application. (Doc. 1-25 ¶ 56).

Plaintiff wrote Haun a letter on September 27, 2001, informing him that he felt "slighted" for not being considered for the VISTA leader position. (Doc. 1-25 ¶ 58).  In response, Haun requested a meeting with Plaintiff, at which Haun told Plaintiff that Haun had previously suggested to Sokolowski that she consider Plaintiff for the VISTA leader position. (Doc. 1-25 ¶¶ 59-60).  Haun told Plaintiff that Sokolowski responded that she did not like Plaintiff and that in no way would Plaintiff be hired as the VISTA leader. (Doc. 1-25 ¶ 60).  Haun told Plaintiff that Howard was not capable of training other VISTA

3

volunteers, and, therefore, Haun would propose to Sokolowski that there be two VISTA leader positions -- a Leader/Coordinator and a Leader/Trainer. (Doc. 1-25 ¶ 61). Haun stated that Plaintiff would be considered for the Leader/Trainer position and Howard would be considered for the Leader/Coordinator position. *Id.* In addition, Haun asked Plaintiff for a copy of his resume. *Id.* On October 27, 2001, Plaintiff received an email from Haun stating that Sokolowski had rejected Haun's idea of having two VISTA leaders and that she had accused Haun of "placating" Plaintiff. (Doc. 1-25 ¶ 65). Plaintiff alleges that the choice of Howard for the VISTA leader position,[4] as well as the treatment of Plaintiff as a whole,[5] was impermissibly based on Plaintiff's race and sex. (Doc. 1-25 ¶ 66).

On October 30, 2001, Plaintiff wrote the Corporation's Equal Opportunity ("EO") Director to complain about the treatment he received as a VISTA volunteer and to request that the matter be reviewed. (Doc. 1-25 ¶ 67). Shortly thereafter, Plaintiff filed an informal complaint with the Corporation's EO office alleging race and sex discrimination. (Doc. 1-25 ¶ 69). On January 24, 2002, an EO Counselor conducted an initial counseling interview with the Plaintiff. (Doc. 1-25 ¶ 9). A final counseling interview with the Plaintiff was conducted on February 7, 2002. (Doc. 1-25 ¶ 10). An EO Counselor's report was

---

[4] Howard was hired as the Bradford County VISTA leader on November 21, 2001, exactly one year from the date on which she was originally hired. (Doc. 1-25 ¶ 68).

[5] In addition to his not being hired for the VISTA leader position, Plaintiff alleges that he was subjected to differential treatment by being: (1) required to submit a resume in applying for the VISTA leader position, whereas Howard was not required to submit her resume; (2) singled out, along with the only other African-American VISTA volunteer, for being late to project meetings even though white VISTA volunteers were repeatedly late for meetings as well; (3) required to submit additional paperwork in order to receive relocation benefits while white VISTA volunteers were not so required. (Doc. 1-25 ¶¶ 82-85, 90, 93).

issued on February 12, 2002. (Doc. 1-25 ¶ 11).  Plaintiff filed a formal complaint of discrimination and reprisal with the EO office on February 26, 2002. (Doc. 1-25 ¶ 12).  An investigation of the formal complaint was conducted, and on October 29, 2002, a Report of Investigation was submitted to the Corporation. (Doc. 1-25 ¶¶ 14-15).  The Corporation then issued a Final Agency Decision on March 17, 2003, concluding that Plaintiff "failed to establish by a preponderance of the evidence that he was discriminated against." (Doc. 1-25 ¶ 16; Doc. 1-25, Ex. A at 17).  Plaintiff received the Final Agency Decision on March 24, 2003. (Doc. 1-25 ¶ 17).

On April 23, 2003, Plaintiff filed his initial complaint in the instant matter in the United States District Court for the Eastern District of Pennsylvania pursuant to federal regulations found in 45 C.F.R. pt. 1225 (1981). (Doc 1-23 p.2).  On January 6, 2004, Plaintiff filed an Amended Complaint (Doc. 1-25) alleging discrimination on the basis of race and sex in violation of the following federal statutes: (1) Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d; (2) Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq*; (3) the National and Community Service Act of 1990 ("NCSA"), 42 U.S.C. § 12501 *et seq*; and (4) the Domestic Volunteer Service Act of 1973 ("DVSA"), 42 U.S.C. § 4950 *et seq*. (Doc. 1-25 p.1).  Plaintiff named as defendants the Corporation, Lenkowsky and Sokolowski in their official capacities, and ACS. (Doc. 1-25 ¶¶ 4-7).  Plaintiff averred jurisdiction over this matter pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, as well as federal question jurisdiction under 28 U.S.C. § 1331. (Doc. 1-25 ¶ 1).  In his Amended Complaint Plaintiff seeks

monetary and equitable relief. (Doc. 1-25 p.1-2).[6] On June 23, 2003, the Corporation and Federal Defendants moved to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction. (Doc. 1-11). On July 10, 2003, ACS filed a motion to dismiss Plaintiff's Amended Complaint for improper venue and failure to state a claim upon which relief can be granted. (Doc. 1-12). On October 28, 2004, the United States District Court for the Eastern District of Pennsylvania (Surrick, J.) granted ACS's motion to dismiss for improper venue and transferred the case to the United States District Court for the Middle District of Pennsylvania, (Doc. 1-35; *Knight v. Corp. for Nat'l & Cmty. Serv.*, No. 03-2433, 2004 U.S. Dist. LEXIS 21790 (E.D. Pa. Oct. 28, 2004)), where venue as to ACS, the Corporation and Federal Defendants, is proper. 28 U.S.C. §§ 1391(b)(2), (e)(2).[7] On April 15, 2005, ACS filed a renewed motion to dismiss Plaintiff's Amended Complaint for failure to state a claim. (Doc. 19-1). On May 2, 2005, the Corporation and Federal Defendants moved to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction. (Doc. 21-1). These motions are fully briefed and ripe for disposition.

---

[6]Plaintiff seeks monetary relief against ACS in the form of compensatory and punitive damages, attorney's fees, and costs. (Doc. 1-25 p.14). Plaintiff seeks equitable relief against the Corporation and Federal Defendants, including the removal of Sokolowski as State Program Specialist for the Corporation, uniform filing requirements for all VISTA members seeking to receive relocation benefits and educational allowances, and Plaintiff's reinstatement as a VISTA volunteer with an appropriate adjustment in membership service time. *Id.*

[7]Defendants' motions to dismiss were denied without prejudice in all other respects. (Doc. 1-35 p.14)

## DISCUSSION

**I. The Corporation and Federal Defendants' Motion to Dismiss**

    **A. Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action where the court lacks jurisdiction over the subject matter of that action. FED.R.CIV.P. 12(b)(1). A defendant may challenge the existence of subject matter jurisdiction in two fashions. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks the complaint as deficient on its face, the Court must assume that "the allegations contained in the complaint are true." *Id.* However, when the motion to dismiss attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to the allegation included in the plaintiff's complaint. *Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F. 3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891). Thus, the Court may weigh all of the available evidence to satisfy itself that subject matter jurisdiction indeed exists. *Id.* It is important to note also that the existence of disputed material facts will not preclude the Court from evaluating the jurisdictional allegations set forth in the complaint. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff will bear the burden of persuasion to show that jurisdiction does in fact exist. See *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991) (quoting *Mortensen*, 549 F.2d at 891).

**B. The Administrative Procedure Act**

It is well settled that the United States, as sovereign, is immune from suit absent a clear and express waiver by statute. *U.S. v. Sherwood*, 312 U.S. 584, 586 (1941). Indeed, unless Congress has, via statute, "expressly and unequivocally waive[d] the United States' immunity from suit," *U.S. v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000), actions against the United States must be dismissed for lack of subject matter jurisdiction. *U.S. v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 514 (1940). Even when a federal officer is the nominal defendant in an action, rather than the United States itself, sovereign immunity will still bar the action if the relief sought against the federal officer will, in effect, operate against the United States. *State of N.M. v. Regan*, 745 F.2d 1318 (10th Cir. 1984). Such is the case when the relief requested is money damages. *Salzman v. Stetson*, 472 F. Supp. 848 (W.D. Pa. 1979).

An exception to the doctrine of sovereign immunity exists when the relief requested from a federal official is equitable in nature. Under the APA, an action "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied" on the basis of the United States' sovereign immunity. 5 U.S.C. § 702 (expressly providing that sovereign immunity is waived in actions for review of agency action under 28 U.S.C. § 1331 in cases in which equitable, rather than money damages, is requested).

Despite this broad language, the APA does not independently confer jurisdiction on the federal district courts. *Califano v. Sanders*, 430 U.S. 99 (1977). Rather, the APA

provides that any person "adversely affected or aggrieved" by agency action, including the "failure to act," is entitled to "judicial review thereof," if the action is made reviewable by statute or so long as there is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704; *see Heckler v. Chaney*, 470 U.S. 821, 828 (1985).  In effect, this means that, under the APA, a federal court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over challenges to federal agency action as claims arising under federal law. *Leavitt v. Shasta County Bd. of Supervisors*, No. Civ. S-04-2468LKKCMK, 2005 WL 2604180 (E.D. Cal. Oct. 12, 2005) (citing *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998).  When there is no other statute providing a cause of action, the APA requires that the federal agency have taken a final action, and that there be no other adequate remedy in court, before conferring a federal cause of action and subject matter jurisdiction. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004).

   The Court construes Plaintiff's amended complaint and briefs as presenting the following alternative arguments.  First, Title VI, Title IX, the NCSA and the DVSA provide Plaintiff with causes of action, conferring federal question jurisdiction under 28 U.S.C. § 1331, for which the United States has waived sovereign immunity under the APA when only equitable relief is sought, thus allowing the Court to review the decision to hire Howard rather than Plaintiff, the alleged differential treatment of Plaintiff, and the Corporation's Final Agency Decision.  Alternatively, if those statutory provisions do not provide Plaintiff with a cause of action, then the decision to hire Howard, rather than Plaintiff, and the Corporation's Final Agency Decision are final agency actions for which

there is no other adequate remedy in court, and therefore the APA provides a cause of action and subject matter jurisdiction to review those decisions.[8]

### 1. Federal Statutory Causes of Action

Plaintiff asserts that he has private causes of action against the Corporation and Federal Defendants, as well as ACS, under Title VI, Title IX, the NCSA and DVSA. If so, the Court would have federal question jurisdiction under 28 U.S.C. § 1331. And under the APA, sovereign immunity is waived as to Plaintiff's claims for equitable relief.

#### a. Title VI and Title IX claims

Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Section 602 directs federal agencies to enforce the

---

[8]In support of their motion to dismiss, the Corporation and Federal Defendants argue that the APA does not allow judicial review of agency action if "(1) statutes preclude judicial review; or (2) [the] agency action is committed to agency discretion by law." (Fed. Def.'s Mot. Dismiss at 4-5 (citing 5 U.S.C. § 701(a)). An agency's decision not to take enforcement action is generally committed to agency discretion and is presumptively unreviewable. *Heckler*, 470 U.S. at 832. This presumption against judicial review may only be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers. *Id.* at 833.
    The Corporation asserts that its decision not to take enforcement action against ACS based on Plaintiff's EO complaint is presumptively unreviewable, and, as there are no statutory guidelines by which to judge the Corporation's decision, the presumption of unreviewability is left unrebutted. Consequently, the Corporation's decision is immune from attack under the APA and the Court lacks subject matter jurisdiction to hear Plaintiff's case.
    The Corporation and Federal Defendants misinterpret the issue before the Court. The issue is not whether the Court has jurisdiction to review the Corporation's decision not to take enforcement action against ACS based on Plaintiff's complaint. That decision, admittedly, is presumptively a matter left to the discretion of the Corporation. Rather, the issue is whether the Court has jurisdiction to review the decision to hire Howard, rather than Plaintiff, and the Corporation's Final Agency Decision.

10

provisions of section 601. 42 U.S.C. § 2000d-1.  Federal agencies must issue rules and regulations to effect compliance with section 601 by terminating funding, refusing to grant funding, or by any other means provided by law. *Id.*  Section 603 of Title VI provides for judicial review of an agency's action, taken pursuant to its section 602 enforcement powers, "in accordance with section 10 of the [APA]." 42 U.S.C. § 2000d-2.

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, was patterned almost exactly after Title VI. *Cannon*, 441 U.S. at 694-96.[9]  The relevant provisions of Title IX are analogous and analytically similar to those of Title VI. *Atkinson v. Lafayette Coll.*, No. Civ. A. 01-CV-2141, 2002 WL 123449, *6 (E.D. Pa. Jan. 29, 2002).  As such, the Court will consider them concurrently.

It is well settled that beneficiaries of federally funded programs have private causes of action under Title VI and Title IX against the recipient of federal funding. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 703, 716 (1979).  However, the Third Circuit Court of Appeals has held that no private cause of action exists under Title VI against a federal funding agency. *NAACP v. Med. Ctr., Inc.*, 599 F.2d 1247, 1254 n.27 (3d Cir. 1979).[10]

---

[9] Section 901 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.  Section 902 of Title IX directs federal agencies to enforce the provisions of section 901, 20 U.S.C. § 1682, and section 903 provides for judicial review of agency action under the APA. 20 U.S.C. § 1683.

[10] *See also McClaskey v. La Plata R-II Sch. Dist.*, 364 F. Supp. 2d 1041, 1045-46 (E.D. Mo. 2005) (holding that school student and her parents had no private cause of action under Title VI against the United States Department of Education, or its Office of Civil Rights, for its failure to investigate a complaint); *Scherer v. U.S.*, 241 F. Supp. 2d 1270. 1286-89 (holding that Title VI did not provide a cause of action against a federal funding agency for a claim that its Office of Civil Rights improperly failed to investigate plaintiff's administrative complaint and failed to enforce civil rights against the federal funding recipient); *Renteria v. Donahue*, D.C. No. 95-CV-1117-JTM, 1996 WL 446905 (10th Cir. Aug. 8, 1996) (holding that plaintiff had no private cause of action under Title

The Third Circuit Court of Appeals has not addressed whether a private cause of action exists under Title IX against a federal funding agency. Because Title IX was patterned after Title VI, *see Cannon*, 441 U.S. at 694-96, the Court is of the opinion that an action under Title IX does not exist against a federal funding agency.[11] As the Corporation is a federal government agency, as defined in 5 U.S.C. § 105, no private cause of action may be brought against it or its officers under Title VI or Title IX.

### b. NCSA and DVSA claims

Under the National and Community Service Act of 1990, 42 U.S.C. § 12501 *et seq.*, "[a]n individual with responsibility for the operation of a project that receives [federal financial] assistance . . . shall not discriminate against a participant in, or member of the staff of, such project on the basis of race . . . [or] sex . . . ." 42 U.S.C. § 12635(a)(1). The text of the non-discrimination provision within the Domestic Volunteer Service Act of 1973, 42 U.S.C. § 4950 *et seq.*, parallels that of the NCSA almost verbatim. *See* 42 U.S.C. § 5057(a). Assistance provided pursuant to these Acts constitutes federal financial assistance for purposes of Title VI and Title IX. 42 U.S.C. §§ 5057(b) and 12635(b). Plaintiff argues that these provisions imply a private cause of action for discrimination. The Court disagrees.

---

VI against the United States Department of Education's Office of Civil Rights); *Cannon*, 441 U.S. at 706 n. 41 (stating in dictum that no private right of action existed under Title VI against a federal funding agency); *but see Gautreaux v. Romney*, 448 F.2d 731, 740 (7th Cir. 1971) (recognizing private cause of action under Title VI against federal funding agency in narrow circumstance were plaintiff alleged that agency acquiesced or actively participated in discriminatory practices).

[11]*See Stimac v. Barr*, 10 F.3d 808 (Table), 1993 WL 483837 (9th Cir. 1993) (affirming district court's decision that no cause of action exists under Title IX against federal agency).

It is axiomatic that, like substantive federal law itself, private causes of action to enforce federal law must be created by Congress. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). The Court's task "is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* (citing *Transamerica Mortgage Advisors, Inc., v. Lewis*, 444 U.S. 11, 15 (1979). Thus, in order to infer a private cause of action, the Court must conclude that, based on the text and structure of the statute, Congress intended to create both a private right and a corresponding remedy. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).

The text and structure of the NCSA and DVSA non-discrimination provisions do not evidence an intent to create either a private right or a corresponding remedy. Whereas statutes like Title VI and Title IX, which provide that no person shall be subjected to discrimination and have been held to create an implied cause of action, focus on the individuals protected, sections 5057(a) and 12635(a)(1) focus mainly on the persons regulated, barring "an individual with responsibility for the operation of a [project or program]" that receives federal assistance from discriminating against participants and staff. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval*, 532 U.S. at 288 (quoting *Ca. v. Sierra Club*, 451 U.S. 287, 294 (1981)).

While "participant[s]" and "member[s] of the staff" are identified as persons benefitted, "[t]he question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." *Sierra Club*, 451

13

U.S. at 294 (citing *Cannon*, 441 U.S. at 690-93 n.13).  Unlike Title VI and Title IX, the purposes of the NCSA and DVSA were not to provide additional civil rights, but rather to encourage community and national service. 42 U.S.C. §§ 4951; 12501(b).  Rarely should a court infer a private cause of action when it would not frustrate the purpose of the statute to not infer one. *See Bonano v. E. Caribbean Airline Corp.*, 365 F.3d 81, 85 (1st Cir. 2004) (citing *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 540 (7th Cir. 1993).  Even more convincing, however, is the fact that, by making Title VI and Title IX applicable to programs funded pursuant to the NCSA or DVSA, *see* 42 U.S.C. §§ 5057(b) and 12635(b), Congress has displayed an intent not to create new rights, but to ensure that volunteers and other beneficiaries of programs receiving assistance pursuant to the NCSA or DVSA enjoy those civil rights already created.  Accordingly, no private cause of action exists under the NCSA or DVSA.[12]

As Plaintiff has no statutory cause of action against the Corporation or Federal Defendants, judicial review is only available if final agency action has been taken for which there is no other adequate remedy in court. 5 U.S.C. § 704.

---

[12] Plaintiff argues that he has a cause of action pursuant to the regulations promulgated under the NCSA and DVSA.  While it is true that the regulations allow a volunteer to file a civil action in federal court after having gone through an administrative complaint procedure, 45 C.F.R. pt. 1225 (1981), a regulation alone cannot create a private cause of action. *Sandoval*, 532 U.S. at 291.  Thus, any action brought after completion of the administrative complaint procedure must stem from a right already created by Congress.  The NCSA and DVSA have created no such right.  In fact, section 12635(d), which directs the CEO of the Corporation to promulgate rules and regulations for the enforcement of the non-discrimination provision, implies that Congress intended that the non-discrimination provision would be enforced by the Corporation through an administrative regime, and not by private parties in the courts.  However, the Court notes that a civil action brought under Title VI or Title IX against the recipient of federal funding, rather than the funding agency, surely would be available under these regulations once the administrative complaint process is complete.

**2. Final Agency Action**

Under the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704.  An implied cause of action under Title VI or Title IX against a recipient of federal assistance is an adequate remedy, and thus precludes judicial review under the APA. *Washington Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993); *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 750 (D.C. Cir. 1990).  As Plaintiff has brought a Title VI action against ACS, the recipient of VISTA's federal assistance, an adequate alternative remedy clearly exists, thus precluding judicial review under the APA.[13]  The Court thus lacks jurisdiction over the Corporation and Federal Defendants.  Accordingly, the Court will grant the Corporation's and Federal Defendants' motion to dismiss all of Plaintiff's claims against them.

---

[13]The Court notes that, if there were no other adequate remedy available, under the APA, case law suggests that the Court could have "review[ed] an agency's discretionary decision on a personnel matter to the limited extent of determining if the decision was arbitrary or capricious or not supported by substantial evidence." *Trammell v. Callaway*, 415 F. Supp. 212, 215 (N.D. Miss. 1976) (citing *Reece v. U.S.*, 455 F.2d 240 (9th Cir. 1972) (district court had jurisdiction under APA to entertain federal employee's request for declaratory judgment and injunction requiring his promotion in case in which employee alleged he was passed over for promotion based on age discrimination); *see Jaeger v. Stephens*, 346 F. Supp. 1217 (D. Colo. 1971) (district court had jurisdiction under APA to review plaintiff's removal as air traffic controller by Federal Aviation Administration, but noting that its inquiry is limited to only whether administrative officials abused their discretion or utilized impermissible procedures in removing plaintiff); *Rosenman v. Levbarg*, 435 F.2d 1286, 1287 (3d Cir. 1970) (federal courts have jurisdiction to "determine whether administrative due process has been accorded to [an] alleged discriminatee" in cases in which the federal government is alleged to have acted discriminatorily).  Case law also suggests that the Court would have had jurisdiction to review the Corporation's Final Agency Decision that Plaintiff failed to establish that he was discriminated against to determine whether it is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. *See Kensington Joint Action Council v. Pauken*, 531 F. Supp. 656 (E.D. Pa. 1982) (setting aside director's decision to suspend VISTA sponsor, concluding that it was arbitrary, capricious, and unsupported by substantial evidence).

**II. ACS's Motion to Dismiss**

    **A. Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting all factual allegations in the complaint as true and "drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir. 1998).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id.* The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred. *See Kost v.*

*Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

### B. Plaintiff's Title IX claim

Section 901 of Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.  Title IX has been construed to prohibit gender discrimination against students and employees in educational institutions that receive federal financial assistance. *O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997) (holding that a federally-funded, state-run hospital, which allowed a college student to serve as a volunteer intern, was not an "education program or activity," and thus did not fall within the reach of Title IX, because the absence of educational features, such as tuition, teachers, an evaluation process or a course of study, demonstrated that the hospital's purpose was not educational).

In the present case, Plaintiff contends that the ACS-VISTA program conducted School Health Councils which were educational in nature.  Therefore, Plaintiff argues, ACS is subject to Title IX on the ground that the ACS-VISTA program is an "education program or activity."  The Court disagrees.

Congress' stated purpose for the VISTA program is "to strengthen and supplement efforts to eliminate and alleviate poverty and poverty-related problems in the United States by encouraging and enabling persons from all walks of life, all geographical areas,

17

and all age groups, including low-income individuals, elderly and retired Americans, to perform meaningful and constructive volunteer service . . . ." 42 U.S.C. § 4951.[14] The Congressional statement of purpose does not mention education at all. Consequently, the Court concludes that Plaintiff participated in a volunteer service program, not an "education program or activity." Plaintiff thus has failed to state a Title IX claim. Accordingly, the Court will grant ACS's motion to dismiss Plaintiff's Title IX claim pursuant to FED. R. CIV. P. 12(b)(6).

### C. Plaintiff's NCSA and DVSA claims

For the reasons stated Part I. B. 1. b. of the Court's opinion, the Court will grant ACS's motion to dismiss Plaintiff's NCSA and DVSA claims.

### D. Plaintiff's Punitive Damage Claims

While monetary damages may be recovered in a Title VI or Title IX action, punitive damages may not. *See Barnes v. Gorman*, 536 U.S. 181, 187-89 (2002). Thus, the Court will grant ACS's motion to dismiss Plaintiff's claim for punitive damages.

---

[14]The Court notes that one of the many purposes of the NCSA is to meet the unmet educational needs of the United States. *See* 42 U.S.C. § 12501(b)(1). However, education is not one of the stated purposes of the VISTA program of which Plaintiff was a participant.

**CONCLUSION**

For the above stated reasons, the Court will (1) grant the Corporation's and Federal Defendants' motion to dismiss all counts of Plaintiff's amended complaint and (2) grant ACS's motion to dismiss Counts II, III, IV, V and VI of Plaintiff's amended complaint, as well as Plaintiff's claim for punitive damages.  Still remaining from Plaintiff's amended complaint is Count I (Title VI - race discrimination) against ACS.

An appropriate Order will follow.


  September 26, 2006                       s/ A. Richard Caputo
Date                                        A. Richard Caputo
                                             United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES KNIGHT,

    Plaintiff,

    v.

CORPORATION FOR NATIONAL AND COMMUNITY SERVICE, et al.,

    Defendants.

CIVIL ACTION NO. 3:04-CV-2596

(JUDGE CAPUTO)

## ORDER

**NOW**, this  26th  day of September, 2006, **IT IS HEREBY ORDERED** that:

(1) Defendant Corporation for National and Community Service's Motion to Dismiss (Doc. 21-1) all counts of Plaintiff's Amended Complaint (Doc. 1-25) is **GRANTED**.

(2) Defendant Leslie Lenkowsky's Motion to Dismiss (Doc. 21-1) all counts of Plaintiff's Amended Complaint (Doc. 1-25) is **GRANTED**.

(3) Defendant Gloria Sokolowski's Motion to Dismiss (Doc. 21-1) all counts of Plaintiff's Amended Complaint (Doc. 1-25) is **GRANTED**.

(4) Defendant American Cancer Society's Motion to Dismiss (Doc. 19-1) Counts II, III, IV, V and VI of Plaintiff's Amended Complaint (Doc. 1-25), as well as Plaintiff's claim for punitive damages, is **GRANTED**.

                            s/ A. Richard Caputo  
                            A. Richard Caputo  
                            United States District Judge